UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JUSTIN P. MEUNIER | CIVIL ACTION |
| VERSUS | 19-12141 |
| HOME DEPOT U.S.A., INC. | SECTION: "J" (1) |

## ORDER & REASONS

Before the Court are a *Motion for Partial Summary Judgment* **(Rec. Doc. 42)** filed by Plaintiff Justin P. Meunier, an opposition thereto (Rec. Doc. 48) filed by Defendant Home Depot U.S.A., Inc. ("Home Depot"), and a reply (Rec. Doc. 51) by Plaintiff. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This litigation derives from personal injuries allegedly sustained while Plaintiff was in the process of renting excavation equipment from Home Depot. Plaintiff alleges he was injured by a defective tongue jack on a trailer (the "Subject Trailer") manufactured by MMDI, Inc. ("MMDI").[1]

On the day of the incident, Plaintiff went to a Home Depot store to rent a mini-excavator.[2] The mini-excavators and other equipment were stored on MMDI trailers, which were for customers to use to transport the equipment.[3] All trailers, except for

---

[1] (Rec. Doc. 42-3, at 2).
[2] *Id.* at 1.
[3] (Rec. Doc. 48-2, at 1).

the Subject Trailer, had a blue and white sticker on them that read "MMDI Trailers" and contained the phone number for MMDI as well as MMDI's website address: www.MMDIcorp.com.[4] In addition to the MMDI label, all of the trailers, including the Subject Trailer, possessed labels that read "Available at Select Locations of The Home Depot Tool Rental," followed by "Compact Power Equipment Rental" and "CompactPowerEquipmentRental.com," as well as the phone number for Home Depot tool rentals.[5] There was also a scannable code symbol on the sticker with "THD Rentals" printed on the side of the code.[6]

Plaintiff was directed by a Home Depot employee to hook up to one of two MMDI trailers.[7] The first trailer Plaintiff attempted to use had an MMDI label;[8] he lowered this trailer onto his vehicle's trailer hitch, but it would not rise again to be repositioned.[9] Next, Plaintiff moved to the Subject Trailer and cranked the handle on the trailer's tongue jack to verify it would work properly, but the handle came loose and struck Plaintiff in the nose.[10] Plaintiff was later diagnosed with a concussion and a depressed fracture of the nasal bone.[11]

Home Depot service technicians are tasked with conducting routine service inspections on all rental equipment, including the Subject Trailer.[12] After the incident

---

[4] *Id.* at 1-2, 4.
[5] (Rec. Doc. 42-3, at 3).
[6] *Id.*
[7] *Id.* at 1.
[8] (Rec. Doc. 48-2, at 2).
[9] (Rec. Doc. 42-3, at 1).
[10] *Id.* at 1-2.
[11] (Rec. Doc. 29, at 4).
[12] (Rec. Doc. 42-4, at 3).

2

occurred, a service technician observed that the roll pin to hold the handle in place on the Subject Trailer was broken, and he replaced and disposed of that roll pin.[13]

Plaintiff filed suit in this Court against Home Depot and MMDI, bringing claims for negligence and products liability. On November 16, 2020, the Court granted MMDI's Motion to Dismiss for Lack of Personal Jurisdiction,[14] leaving Home Depot as the sole remaining defendant. The instant motion is before the Court on the briefs and without oral argument.

## PARTIES ARGUMENTS

Plaintiff seeks summary judgment as to Home Depot's status as a manufacturer under the Louisiana Products Liability Act (the "LPLA"). Specifically, Plaintiff contends that Home Depot is either (1) an "apparent manufacturer" of the Subject Trailer because the trailer did not contain any labels identifying the actual manufacturer, MMDI, or (2) a seller who exercised control over a quality of the product that caused Plaintiff's injuries, because Home Depot's technicians would perform repairs on trailers as necessary.

Home Depot avers that summary judgment is not proper in this case because there are material issues of fact as to whether it is an "apparent manufacturer" of the Subject Trailer. Specifically, Home Depot asserts that material issues of fact exist as to whether it held itself out to be the manufacturer of the Subject Trailer because "[t]here were no stickers or other signage on the Subject Trailer stating or otherwise representing that the Subject Trailer was manufactured by Home Depot" and the

---

[13] *Id.* at 7.
[14] (Rec. Doc. 52).

Subject Trailer was surrounded by several other trailers that were properly labeled, putting Plaintiff on notice that the trailers for rent, including the Subject Trailer, were made by MMDI.[15]

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving

---

[15] (Rec. Doc. 48, at 2-4).

4

party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

When examining matters of state law, the Court will employ the principles of interpretation used by the state's highest court. *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010). Mindful of Louisiana's distinction between primary and secondary sources of law, the Court will begin its analysis with reliance on the Louisiana Constitution and statutes before looking to "'jurisprudence, doctrine, conventional usages, and equity, [which] may guide the court in reaching a decision in the absence of legislation and custom.'" *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004) (*quoting* LA. CIV. CODE art. 1 rev. cmt. b). If the Court must make an "Erie guess" on an issue of Louisiana law, the Court will decide the issue the way that it believes the Supreme Court of Louisiana would decide it. *Id.* The Court is not strictly bound by the decisions of the state intermediate courts and may disregard them if the Court is "convinced that the Louisiana Supreme Court would decide otherwise." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007).

## DISCUSSION

Under the LPLA, a plaintiff may only recover from a defendant who qualifies as a manufacturer of the product that caused injury. *See* LA. R.S. 9:2800.54(A). The

LPLA's definition of manufacturer is broader than those who actually manufacture a product. The LPLA contains the following relevant definitions:

> "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:
>
> (a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.
>
> (b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.

LA. R.S. 9:2800.53(1). Plaintiff contends that Home Depot qualifies as a manufacturer under these last two definitions. The Court considers each in turn.

## I.   APPARENT MANUFACTURER

The "apparent manufacturer" doctrine allows a plaintiff to hold the seller of a product liable for injuries caused by a defect in that product where the seller leads a reasonable consumer to believe that it is the manufacturer of the product. *Chevron USA, Inc. v. Aker Mar., Inc.*, 604 F.3d 888, 895 (5th Cir. 2010). "'[W]here the vendor puts only its name upon the product without indicating that it is actually the product of another[,] then the public is induced by its reasonable belief that it is the product of the vendor to rely upon the skill of the vendor and not upon the skill of any other," and the vendor may be held liable as a manufacturer. *Id.* (*quoting Penn v. Inferno Mfg. Corp.*, 199 So.2d 210, 214-15 (La. App. 1st Cir. 1967)). Even a vendor that labels a product with the actual manufacturer's label may not be shielded from liability, depending on the circumstances. *See, e.g., Rutherford v. Coca–Cola Bottling Co. of*

6

*Shreveport, Inc.*, 501 So.2d 1082, 1085-86 (La. App. 2d Cir. 1987) (holding bottler of Coca-Cola was apparent manufacturer of canned Cokes it sold even though labels identified actual manufacturer in small print).

Ultimately, "when the distributor's actions give the buying public a basis to assume that it may be the manufacturer of a product it distributes, a jury will usually be within its province to conclude that the distributor held itself out as the product's manufacturer, even though the indications may be less than clear and the ambiguity as to the actual manufacturer may subsequently be clarified." *Chevron*, 604 F.3d at 897. However, courts will not assign apparent manufacturer liability to every seller of a product; liability "'must be judged from the viewpoint of the purchasing public, and in light of circumstances as of the time of purchase.'" *Id.* at 896 (quoting *Hebel v. Sherman Equip.*, 442 N.E.2d 199, 203 (1982)).

In *Chevron USA, Inc. v. Aker Maritime, Inc.*, the Fifth Circuit upheld a jury verdict holding a distributor of faulty bolts, Lone Star, liable under the apparent manufacturer doctrine. *Id.* at 898. Lone Star was a well-known manufacturer of bolts and had distributed faulty bolts in boxes bearing Lone Star labels with a packing slip noting that they were either "manufactured or distributed" by Lone Star. *Id.* & n.8. The court also noted that the employee who received the bolts was under the impression that the bolts were Lone Star's. *Id.* at 898. While the bolts had small markings of the actual manufacturer's initials on their heads, the court held that the markings were not a sufficiently clear indication that someone else had manufactured the bolts and refused to overturn the jury's verdict. *Id.* at 898-99.

7

In this case, Plaintiff contends that summary judgment is appropriate because the Subject Trailer did not display any markings other than those of Home Depot. The Court is not persuaded. First, the evidence that Home Depot held itself out as a manufacturer is less compelling than the evidence present in *Chevron*. The label merely stated that the trailer was "available at" the Home Depot, which is much less suggestive than the packing slip stating the bolts were "manufactured or distributed by" Lone Star. *Id.* at 898 n.8. Unlike Lone Star, Home Depot is not a well-known manufacturer of trailers but widely recognized as a big box store, and Plaintiff has not presented any evidence to the contrary. *Cf. id.* at 898; *Penn*, 199 So.2d at 217 (noting that defendant "was so well known in the oil fields as being a manufacturer of oil field equipment").

Plaintiff relies almost entirely on the fact that Subject Trailer did not bear the mark of its manufacturer and only had Home Depot labels to argue that summary judgment is appropriate. The Fifth Circuit has rejected the imposition of liability based on such limited evidence. *See Chevron*, 604 F.3d at 898 ("If the boxes [with the defendant's labels] were the only evidence against Lone Star, the cases would indicate a different decision."). Moreover, *Chevron* was concerned with the sufficiency of the evidence supporting the jury's verdict. Plaintiff's burden here, on summary judgment, is much higher: he must demonstrate that no reasonable jury could return a verdict for Home Depot. He fails to do so.

The record reflects that the Subject Trailer was an MMDI Model ME510R trailer and was located next to ten other trailers of the same model that were

8

identical, except that the Subject Trailer lacked an MMDI label.[16] Plaintiff first attempted to hook up one of the trailers with an MMDI label to his vehicle before attempting to do so with the Subject Trailer.[17] Notably, in his affidavit Plaintiff declares that he "do[es] not recall seeing any labels on the second trailer bearing the name MMDI" but does not mention any labels on the first trailer.[18]

Viewing the evidence in the light most favorable to Home Depot, a reasonable jury could conclude that Home Depot did not label the Subject Trailer as its own or otherwise hold itself out as the manufacturer. While there may be sufficient evidence for a jury to find Home Depot liable as an apparent manufacturer, summary judgment is not proper here and will be denied.

### II. MANUFACTURER/SELLER

Plaintiff also contends that Home Depot qualifies as a manufacturer because it is "[a] seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage" (sometimes referred to as a "manufacturer/seller"). LA. R.S. 9:2800.53(1)(b). The Court agrees that Home Depot qualifies as a seller under the LPLA, which is defined as "a person or entity who is not a manufacturer and who is in the business of conveying title to or possession of a product to another person or entity in exchange for anything of value." LA. R.S. 9:2800.53(2). Nevertheless, the Court finds that Plaintiff has failed to establish that Home Depot qualifies as a manufacturer under this definition.

---

[16] (Rec. Doc. 48-2, at 1-2).
[17] (*Id.* at 2; Rec. Doc. 42-3, at 1-2).
[18] (Rec. Doc. 42-3, at 2).

9

For a seller to be held liable as a manufacturer/seller under the LPLA, a seller must have a "direct and specific" influence over "a characteristic of the design, construction or quality of the product that causes damage." *Parks ex rel. Parks v. Baby Fair Imports, Inc.*, 98-626 (La. App. 5th Cir. 12/16/98), 726 So.2d 62, 64. A seller's repair that does not alter the basic design of a product does not rise to the level of control necessary to hold the seller liable as a manufacturer. *Slaid v. Evergreen Indem., Ltd.*, 32,363 (La. App. 2 Cir. 10/27/99), 745 So. 2d 793, 799. Rather, a repair must be "of such a substantial nature as to be considered [a] 'remanufacturing, reconditioning, or refurbishing [of] a product'" or otherwise alter a product "in a meaningful and creative way" in order to impose liability. *Id.*

In *Parks ex rel. Parks v. Baby Fair Imports, Inc.*, the plaintiffs alleged that the defendant was a manufacturer/seller of a defective shirt because it placed a work order specifying the materials and color of the shirt and had a quality assurance program that tested the construction and fabric quality but did not test for defects. 726 So.2d at 64-65. The court disagreed, reasoning that simply placing an order with a manufacturer and making selections from available products did not constitute sufficient control to qualify the defendant as a manufacturer. *Id.* at 64; *see also Stone Energy Corp. v. Nippon Steel*, 475 F. Supp. 3d 563, 568 (W.D. La. 2020) ("[The defendant's] mere relay of information from [the buyer] to [the manufacturer] does not render [the defendant] a manufacturer under the LPLA."). Additionally, the court determined that the quality assurance tests did not make the defendant a

10

manufacturer because the tests were performed on a finished garment and did not alter the shirt in any way. *Parks*, 726 So.2d at 65.

Conversely, in *Stone Energy*, the court found that the defendant-seller exercised sufficient control over the product, pipe for an oil well, because even though the pipe was manufactured by another party, the defendant-seller installed couplings onto the pipe. 476 F. Supp. 3d at 565, 568. Nevertheless, the court denied summary judgment because it was unclear whether the installation of the coupling caused the defect. *Id.* at 568-69.

Here, Plaintiff contends that Defendant qualifies as a manufacturer/seller because Home Depot's service technicians were responsible for regularly inspecting the trailer for "any quality that would render the trailer unrentable and performing repairs as necessary."[19] But unlike *Stone Energy*, these types of repairs do not alter the basic design of the trailers and therefore are insufficient to hold Home Depot liable as a manufacturer. *See Slaid*, 745 So. 2d at 799. Summary judgment must be denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's *Motion for Partial Summary Judgment* **(Rec. Doc. 42)** is **DENIED**.

New Orleans, Louisiana, this 2nd day of March, 2021.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[19] (Rec. Doc. 42-1, at 8).